IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:18-cv-00174-M-BP |
| § | |
| LARRY CECIL CABELKA and § | |
| JACQUELINE KAY LATIMER, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is a suit to foreclose federal income tax liens and partially satisfy a judgment for tax liabilities. The United States ("the Government") seeks to enforce its liens and collect on the judgment by obtaining an order authorizing the sale of a house and about 4.40 acres of land located in Megargel, Archer County, Texas ("the Property"), which it claims Larry Cabelka ("Cabelka") owns. Also named in the suit is Jacqueline Latimer ("Latimer") who asserts that she owns the Property. The Government has moved for summary judgment, arguing that Cabelka is the "true owner" of the Property and that the Court should order the foreclosure of the tax liens and the sale of the Property in partial satisfaction its judgment against Cabelka. ECF No. 22-1 at 26.

Before the Court are the Government's Motion for Summary Judgment and Brief in Support, ECF No. 22, and Appendix, ECF No. 23; Cabelka's Response, ECF No. 29; Answers of Latimer, ECF No. 31; Latimer's Response and the supporting Affidavit of Cabelka, ECF Nos. 32 and 33; and the Government's Reply, ECF No. 34. Also before the Court are the surreply, additional exhibit, and sur-surreply, ECF Nos. 35, 42-1, and 39-1. Based upon a full review of the pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that Chief

United States District Judge Barbara M. G. Lynn **GRANT** the Government's Motion for Summary Judgment, ECF No. 22, and enter an order granting the foreclosure of the Government's liens and sale of the Property.

**I.     BACKGROUND**

On January 30, 2018, the Court entered its Amended Final Judgment in Civil Action No. 7:16-cv-00126-O-BP, styled *United States of America v. Larry Cecil Cabelka* ("the First Lawsuit"), finding Cabelka liable in the amount of $26,400,532.02, as of June 30, 2017, for unpaid federal income taxes for the years 1997-2003 and 2005-09, plus additional prejudgment and post-judgment interest. Cabelka appealed the Amended Judgment to the United States Court of Appeals for the Fifth Circuit, which affirmed on March 26, 2019. *United States v. Cabelka*, 766 F. App'x 57 (5th Cir. 2019). The Government now seeks to foreclose its tax liens and satisfy part of its judgment against Cabelka through a sale of the Property.

The Property consists of a house and approximately 4.40 acres of land described by metes and bounds in the Cash Deed dated March 27, 2001 from Kelly E. Schmaltz and wife, Toni L. Schmaltz, to G. D. Larson ("Larson"), recorded in Volume 0607, Page 946 of the Official Public Records of Archer County, Texas. ECF No. 23-7 at 1-2. The Property's address also is listed as 9636 FM 210, Megargel, TX 76370. *See* ECF No. 23-14 at 9. The Government asserts that Larson was Cabelka's friend and held title to the Property as his nominee, but that Cabelka was the true owner. Cabelka denies that he owns the Property and claims instead that Latimer owns it pursuant to a written deed from Larson to Latimer that never was recorded and is now lost. Latimer agrees with Cabelka.

Larson died on June 10, 2009, and his son, Gary D. Larson, was the personal representative of his estate. No conveyance of the Property from Larson was ever recorded, though Gary Larson believes that his father executed a deed conveying it to Cabelka. Cabelka's daughter-in-law,

Bonnie Cabelka, also testified in a deposition in the First Lawsuit that she had seen an original deed in which Larson conveyed the Property to Cabelka, but she did not have a copy of the deed and did not know its location. Cabelka denies that Larson ever deeded the Property to him. The Property was not an asset of Larson's estate after his death. On February 19, 2019, Gary Larson executed a Quitclaim Deed conveying any interest that the Larson's estate had in the Property to Cabelka. Thereafter, Gary Larson and his brother, Richard Larson, also disclaimed any interest in the Property.

## II.     Summary Judgment Evidence

The Government offered twenty-five exhibits in support of its Motion, which are briefly described as follows:

1. Amended Final Judgment in the First Lawsuit dated January 30, 2018. ECF No. 23-1.

2. Declaration of David Dodgen in Support of United States' Motion for Summary Judgment per 28 U.S.C. § 1746. ECF No. 23-2.

3. Fifth Circuit Court of Appeals Judgment in *United States v. Cabelka*; No. 18-10258, filed March 26, 2019. ECF No. 23-3.

4. Opinion in *United States v. Cabelka*; No. 18-10258, filed March 26, 2019. ECF No. 23-4.

5. Excerpts from the Oral Deposition of Cabelka in the First Lawsuit dated September 18, 2018. ECF No. 23-5.

6. Opinion of the Second District Court of Appeals in *Cabelka v. Schmaltz*, 2014 Tex. App. LEXIS 5531, dated May 22, 2014. ECF No. 23-6.

7. Cash Deed from Schmaltz to Larson dated March 27, 2001. ECF No. 23-7.

8. Excerpts from the Oral Deposition of Jared Cabelka in the First Lawsuit dated May 4, 2017. ECF No. 23-8.

9. Deposition of Latimer in Cause No. CJ-2013-159, *Jacqueline Latimer d/b/a Golden Triangle Farms v. Kinder*, in the District Court of Comanche County, Oklahoma, dated August 27, 2013. ECF No. 23-9

10. Texas Driver's License Details for Cabelka. ECF No. 23-10.

11. Texas Driver's License Details for Latimer. ECF No. 23-11.

12. Cabelka's Amended Special Appearance in this case, ECF No. 12. ECF No. 23-12.

13. Latimer's Amended Special Appearance in this case, ECF No. 13. ECF No. 23-13.

14. Germania Insurance Company documents concerning the home on the Property. ECF No. 23-14.

15. Declaration of Richard Larson per 28 U.S.C. § 1746. ECF No. 23-15.

16. Declaration of Gary Larson per 28 U.S.C. § 1746. ECF No. 23-16.

17. Excerpts from the Oral Deposition of Bonnie Cabelka in the First Lawsuit dated May 4, 2017. ECF No. 23-17.

18. Quitclaim Deed from Gary Larson, as Personal Representative of Larson's Estate, to Cabelka dated February 19, 2019. ECF No. 23-18.

19. Disclaimer of Interest of Gary Larson, as Executor of Larson's Estate. ECF No. 23-19.

20. Excerpts from the Oral Deposition of Frederick Ricke in the First Lawsuit dated September 12, 2017. ECF No. 23-20.

21. Transcript of December 13, 2018 hearing in the First Lawsuit. ECF No. 23-21.

22. Declaration of Ramona Notinger per 28 U.S.C. § 1746. ECF No. 23-22.

23. Notices of Federal Tax Liens recorded in the Official Public Records of Archer County, Texas as Instrument Nos. 142068 and 142069 and at Volume 0788, Pages 0443-0444. ECF No. 23-23.

24. Notice of Federal Tax Lien recorded in the Official Public Records of Archer County, Texas as Instrument No. 143611. ECF No. 23-24.

25. Abstract of Judgment recorded in the Official Public Records of Archer County, Texas as Instrument No. 144911. ECF No. 23-25.

The summary judgment evidence offered by Cabelka and Latimer in response to the Government's Motion consists of the Quitclaim Deed attached as Exhibit I to Cabelka's Answers to the United States on Property at Megargel, Texas, ECF No. 29; Cabelka's Affidavit, ECF No.

4

33; copies of checks signed by Latimer, ECF No. 42-1; and Latimer's Affidavits attached to her Sur-reply, ECF No. 35-1, and Objection to the United States Motion to Strike Latimer's Declaration ECF No. 46 and Supporting Brief, ECF No. 49.

### III.   LEGAL STANDARDS

#### A.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429. Merely colorable evidence or evidence not significantly

probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [Court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B. *Pro Se* Standard

"*Pro se* plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, allowing all reasonable inferences that can be drawn from their pleadings." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 436 (S.D. Tex. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Nevertheless, *pro se* plaintiffs must "still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (citing

*Grant v. Cellular*, 59 F.3d 523, 524 (5th Cir. 1995); *Haines*, 404 U.S. at 520). And "while courts liberally construe the pleadings of *pro se* litigants, courts are not obligated under Federal Rule of Civil Procedure 56 [ ] to search the record to find evidence supporting a party's opposition to a summary judgment motion." *Murray v. Int'l Bus. Machines Corp.*, No. 3:14-CV-1809-M-BF, 2015 WL 4635776, at *1 (N.D. Tex. Aug. 4, 2015) (citations omitted).

IV.  ANALYSIS

    A.  **Cabelka Owns the Property.**

        1.  **The Government's Summary Judgment Evidence**

The Government offered competent summary judgment to show that Cabelka is the true owner of the Property. First, the Government proved that Kelly and Toni Schmaltz conveyed the Property to Larson by a Cash Deed dated March 27, 2001. ECF No. 23-7 at 1-2. Larson was a friend of Cabelka who resided in North Dakota his entire life before dying on June 10, 2009. ECF Nos. 23-15 at 1 and 23-16 at 1. "G. D. Larson" is handwritten next to "Grantee" in the deed, and Cabelka admitted that he wrote the address for Larson as "P.O. Box 295, Megargel, TX 76370." ECF No. 23-15 at 13; p. 49, ll. 3-4. Cabelka first opened this post office box and began using it in 2001. *Id.*, p. 31, ll. 13-14. The Court notes that Cabelka listed this post office box with the Clerk of Court as his address in this case and in the First Lawsuit. Larson never used the Megargel post office box address as his mailing address. ECF Nos. 23-15 at 2 and 23-16 at 2. Larson's handwriting does not appear on the first page of the Cash Deed. *Id.* As shown in the Amended Judgment in the First Case, Cabelka had not paid his federal income taxes for 1997 through 2000 when the conveyance of the Property to Larson occurred. ECF No. 23-1. Letters Testamentary were issued by the District Court of Benson County, North Dakota, appointing Gary Larson as the personal representative of Larson's estate on June 17, 2009. Gary Larson executed a quitclaim

deed on February 19, 2019, conveying whatever interest Larson may have had in the Property to Cabelka, and he also executed a disclaimer of any interest in the Property on behalf of Larson's estate. *See* ECF Nos. 18 and 19.

Second, the Government offered evidence showing that Cabelka used the Property as if it were his own. On August 27, 2013, Latimer testified in another lawsuit that she had lived in Megargel for nine and a half years and that she lived there with Cabelka. ECF No. 23-9 at 2, p. 2, ll. 10-15. She testified that it was Cabelka's home and that she was living in his home for the nine and a half years. *Id.*, p. 2, ll. 20-24. The Government's public record search revealed that Cabelka and Latimer had Texas driver's licenses showing their address as 9636 FM 210, Megargel, TX 76370. ECF No. 23-10 and 23-11. Homeowner's insurance records for policies covering the home located on the Property during the policy periods March 6, 2015 through March 6, 2018 listed the insureds as Cabelka and Latimer. ECF No. 23-14 at 1, 4, and 7. Another document in those insurance records identified Cabelka as the insured and Latimer as the second named insured. *Id.* at 10. In 2003 or 2004, Cabelka and a man he hired spent a lot of time remodeling the house on the Property, including rocking the house, replacing the carpet and installing tile, building rock waterfalls, doing work in the bathrooms, and replacing some of the kitchen appliances. ECF No. 5 at 15, p. 56, ll. 13-15 and p. 55, l. 1 through p. 56, l. 5. Cabelka spent several hundred thousand dollars in time on the project. *Id.*, p. 56, ll. 6-12. He had two water bill accounts and an electricity service account on the house on the Property, all in his name, for which Latimer paid certain of the bills by check and listed Cabelka's name on the checks' memo line. *Id.* at 23, pp. 99, l. 5 through 101, l. 19.

Third, the Government offered a state appellate court decision in a case involving Cabelka and the Schmaltz family concerning the swap of equipment and the Property to show that Cabelka

8

is the true owner. In 2006, Cabelka sued Kelly Schmaltz and several members of his family for breach of contract and conversion in state court in Archer County, Texas. *See Cabelka v. Schmaltz*, No. 02-13-00143-CV, 2014 WL 2144182 (Tex. App.—Fort Worth, May 22, 2014, no pet.); ECF No. 23-6. The dispute involved the value of various items of equipment and real property that the parties swapped in the transaction that involved the conveyance of the Property to Larson. Cabelka appealed the trial court's judgment, and the Fort Worth Court of Appeals affirmed. In the appellate opinion, the court cited trial testimony that indicated Cabelka set the values of the various equipment and property traded to reduce the value of the house that was swapped in the transaction. Larson was not a party to the case and is not mentioned in the opinion. The Government argues that the absence of Larson as a party in the litigation between Cabelka and the Schmaltz family proves that he was not involved in the swap of equipment and the Property.

Finally, the Government offered evidence that Larson executed a written deed to the Property to Cabelka at some point, but the deed was never recorded, and its current location is unknown. Larson's son, Richard, stated that after his father died, he saw a deed of the Property from Larson to Cabelka, but he was not able to locate a copy of the deed. ECF No. 23-15 at 2. In the quitclaim deed in which Gary Larson transferred whatever interest Larson had in the Property to Cabelka, Gary Larson also stated "[o[n information and belief, [Larson] executed a deed transferring title to the [Property] to … Cabelka, but that deed or a copy of that deed cannot be located." ECF No. 23-18 at 1. Bonnie Cabelka, Cabelka's daughter-in-law, testified in a deposition in the First Lawsuit that Cabelka has an original deed to the Property in which Larson and his wife deeded it to him in about 2006 or 2007. ECF No. 23-17 at 13, p. 47, l. 21 through p. 48, l. 5. Bonnie Cabelka testified that she saw the deed, but she did not keep a copy of it. *Id.*, p. 48, ll. 6-7. It is not clear why the Government offered the evidence of the lost, unrecorded deed since it claims that

9

Larson was Cabelka's nominee, and that Cabelka was the true owner of the Property though it was held in Larson's name. As will be noted below in connection with the Defendants' evidence regarding another supposedly lost or destroyed deed, the undersigned concludes that the evidence offered by the Government is not sufficient to prove the existence of such a deed from Larson to Cabelka.

### 2.   The Defendants' Summary Judgment Evidence

Cabelka did not offer any summary judgment evidence in response to the Government's Motion other than a copy of a quitclaim deed from Larson and his wife to Cabelka dated December 31, 2002 concerning a home located in Lawton, Oklahoma. ECF No. 29, Exhibit I.

In support of her response to the Government's Motion, Latimer offered Cabelka's affidavit, copies of checks paying certain bills, and her own affidavits. *See* ECF Nos. 33, 42-1, 35-1, and 49, Exhibit A. In his affidavit, Cabelka stated that Larson and his wife deeded the "Megargel home" to Latimer in 2004 and mailed the deed to Megargel. Also in that mailing was a deed from Larson and his wife to Cabelka of a home located in Lawton, Oklahoma. *Id.* The deed on the Megargel home "apparently" was stolen by Cabelka's son, Jared, and Jared's wife, Bonnie Cabelka, in 2014 along with other items in the home. *Id.* Cabelka stated further that Latimer lived in the Megargel home from 2004 until late 2018, paid the taxes, electric bill, and water bills, and also paid the property insurance bill until about 2017. *Id.*

The copies of checks that Latimer offered included checks payable to the City of Megargel for 2011, one month in 2012, and five months in 2015, and checks payable to Fort Belknap Electric for eleven months in 2011, two months in 2013 and 2014, and five months in 2015. ECF No. 42-1. All the checks to the City of Megargel reflect on the memo line that they were for "Larry

Cabelka." *Id.* All but one of the checks to Fort Belknap Electric have the same notation, but also include the account number. *Id.* One check, number 1905, only lists the account number. *Id.*

In her affidavits, Latimer stated that Larson and his wife gave her the Megargel house in 2004, and she has had possession of the house since then. ECF Nos. 35-1 and 49, Exhibit A. The deed was sent to the Megargel post office, but it has been stolen or misplaced, and Latimer cannot find it. *Id.* She stated that Cabelka does not have an ownership interest in the Megargel house. *Id.* She has paid the property taxes, utility bills, and house insurance, not Cabelka. *Id.* She performed maintenance on the house including lawncare, pool maintenance, and cleaning. *Id.* She paid for the materials for an outer fence six years ago that cost about $4,000. *Id.* She maintained the house until spring of 2019 when it became uninhabitable. *Id.*

### 3.     The Legal Authorities

The Government seeks summary judgment and an order authorizing the sale of the Property because Larson was Cabelka's nominee, and Cabelka is the true owner of the Property. For a federal tax lien to attach to property of a debtor, the debtor must have a legal interest in that property under state law. *Aquilino v. United States,* 363 U.S. 509, 512–13 (1960) ("state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the [federal] statute"). If the debtor has an interest in the property under state law, federal law provides the applicable consequences for tax purposes. *Drye v. United States,* 528 U.S. 49, 58 (1999). Because the Property is in Texas, the Court looks to Texas law to determine whether Cabelka has rights in the Property. *See, e.g.*, *United States v. Chapman,* 756 F.2d 1237, 1240 (5th Cir.1985).

Texas law does not set out factors for determining whether one party is the nominee of another. *United States v. Williams*, Civil Action No. 6:06cv524, 2008 WL 5572655, at *10 (E.D.

Tex. Oct. 31, 2008), *rec. adopted*, 2008 WL 5424090 (E.D. Tex. Dec. 30, 2008). However, the Fifth Circuit has noted that "the concepts of 'nominee,' 'transferee,' and 'alter ego' are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability. A nominee theory involves the determination of the true beneficial ownership of property." *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000). "Specific property in which a third person has legal title may be levied upon as a nominee of the taxpayer if the taxpayer in fact has beneficial ownership of the property." *Id.* Courts consider the following non-exclusive factors in deciding whether nominee status exists:

> (a) No consideration or inadequate consideration paid by the nominee; (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) Close relationship between transferor and the nominee; (d) Failure to record conveyance; (e) Retention of possession by the transferor; and (f) Continued enjoyment by the transferor of benefits of the transferred property.

*Id.*, n.1 (citing *Towe Antique Ford Found. v. I.R.S.,* 791 F. Supp. 1450, 1454 (D. Mont. 1992)). "While nominee status may be found when a taxpayer owns the property at issue and then transfers that property, it is incorrect to conclude that nominee status exists *only* in that situation." *United States v. Burnett*, Civil Action No. C-09-286, 2010 WL 3941906 at *7 (S.D. Tex. Oct. 7, 2010), *aff'd*, 452 F. App'x 569 (5th Cir. 2011).

The undersigned considers each of the relevant factors listed in *Oxford Capital*.

1. Consideration paid by the alleged nominee

Here, there is no competent summary judgment evidence that Larson paid any consideration for the Property. The opinion of the Fort Worth Court of Appeals in the *Cabelka v. Schmaltz* case strongly suggests that Larson was not involved in the transaction by which Kelly and Toni Schmaltz supposedly conveyed the Property to him. Larson's name was written in by

hand on the Cash Deed at issue as the Grantee, and Cabelka admits writing in the Megargel post office box address as Larson's address.

    2.       Transfer in anticipation of suit while true owner controls

The summary judgment evidence proves that Cabelka was not paying his federal income taxes in 2001 when the Property was conveyed to Larson. Nevertheless, Cabelka invested several hundred thousand dollars in time in remodeling the house located on the Property, and he lived there with Latimer for many years with utility accounts in his name and homeowner's insurance also listing him as an insured. Other than being titled in Larson's name and Latimer doing some maintenance and paying certain bills, the summary judgment evidence shows that Cabelka controlled the Property.

    3.       Close relationship between transferee and nominee

The evidence proves that Larson was Cabelka's friend and was a grantor in the quitclaim deed to Cabelka of another residential property in Lawton, Oklahoma.

    4.       Failure to record conveyance

There is no dispute that the Cash Deed from Mr. and Mrs. Schmaltz to Larson was recorded. Although the Property was held in Larson's name until the time of his death, he never resided on the Property and instead maintained his residence in North Dakota. This factor does not support a finding that Larson was Cabelka's nominee as to the Property, but it is simply one of the factors that the Court must consider. *See, e.g., United States v. Evseroff,* No. Civ. A. 00-CV-6029(DGT), 2003 WL 22872522, at *9 (E.D.N.Y. Sept. 30, 2003) ("In determining whether a third-party holds property as a nominee ..., courts have considered, inter alia, the following non-exclusive factors...."); *Turk v. I.R.S.,* 127 F. Supp. 2d 1165, 1167 (D. Mont. 2000) ("No factor can

dispose of the [nominee] issue by itself, and no factor is necessarily required in order to find nominee status.").

     5.     Enjoyment of the property

As previously stated, the summary judgment evidence proves that Cabelka improved the Property and lived in the house located on the Property with Latimer for many years. Before the Government filed suit against Cabelka for his unpaid taxes in the First Case, Latimer testified in an Oklahoma state court proceeding in 2013 that she and Cabelka had lived together for over nine and a half years in the house on the Property and that the home belonged to him. ECF No. 23-9 23-9 at 2, p. 2, ll. 10-15, 20-24. The evidence supports a conclusion that Cabelka was the owner of the Property though it was titled in Larson's name.

Applying the relevant factors from *Oxford Capital* to the facts here, four of the five factors support a conclusion that Larson was Cabelka's nominee and that Cabelka was the true owner of the Property.

The opposing summary judgment evidence offered by Cabelka and Latimer does not raise a genuine issue of fact for trial on the issue of whether Cabelka was the true owner. The quitclaim deed from Larson and his wife to Cabelka of a home in Lawton, Oklahoma offered by Cabelka is not relevant to the question before the Court. Likewise, Latimer's conclusory and self-serving statements in her affidavits that she owns the Property, not Cabelka, and paid bills for its maintenance and upkeep are directly contradictory to her sworn deposition testimony in the previously mentioned Oklahoma state court case in which she testified that she lived with Cabelka for over nine years in Megargel, Texas in a home that belonged to Cabelka. As a matter of law, these statements do not raise an issue of material fact for trial. *See Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[A] nonmovant cannot defeat a motion for summary

judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (explanation of contradictory affidavit insufficient to raise fact issue for trial). The checks paying certain water and electricity bills that Latimer offered, with one exception, specifically mentioned Cabelka's name in the memo line and are consistent with a conclusion that she was paying Cabelka's bills, not her own.

The Defendants' attempt to defeat the Government's Motion by asserting that Larson gave the Property to Latimer likewise is unavailing. Cabelka and Latimer insist that Larson deeded the Property to Latimer, apparently as a gift, and mailed the deed to Megargel, but the deed was misplaced or stolen. In any event, no written deed from Larson to Latimer was ever recorded. In Texas, a valid deed to real property must be in writing and signed and delivered by the conveying party or his agent. *See* Tex. Prop. Code § 5.021 (2020). In the case of a lost or destroyed deed, "the existence of the writing can be proven by parol evidence only if the witness saw the writing and can testify clearly as to its contents." *Placer Energy Corp. v. E & S Oil Co.*, 692 S.W.2d 197 (Tex. App.—Fort Worth 1985, no writ) (citing *Arreguin v. Cantu,* 609 S.W.2d 639 (Tex. Civ. App.—San Antonio 1980, no writ); *Crosby v. Davis,* 421 S.W.2d 138 (Tex. Civ. App.—Tyler 1967, writ ref'd n.r.e.). The summary judgment evidence offered by Cabelka and Latimer is conclusory and does not clearly address the contents of the allegedly lost or stolen deed with the specificity required to prove its contents.

However, even if such a written deed existed, any conveyance by Larson would have been as Cabelka's nominee since Cabelka was the true owner of the Property for the reasons previously stated. Such a conveyance at a time when Cabelka was delinquent in paying his federal income tax liabilities to the Government, and made without consideration, would evidence Cabelka's

15

intent to hinder, delay, or defraud the Government. A conveyance under these circumstances would be subject to attack as a fraudulent transfer under the Texas Uniform Fraudulent Transfers Act, Tex. Bus. & Com. Code § 24.001, *et seq. See United States v. Chapman*, 756 F.2d. 1237 (5th Cir. 1985) (fraudulent conveyance to daughter). Cabelka would not be able to shield the Property from the Government's liens by having Larson, his nominee, give it to Latimer, the woman with whom he has lived for many years. Consequently, had Larson given the Property to Latimer, as the Defendants assert, the Government still would be entitled to summary judgment on these facts.

Finally, the undersigned notes that Latimer did not raise an issue for trial on her right to the Property by adverse possession. Latimer did not plead adverse possession as a defense to the Government's complaint against her, nor did she counterclaim against the government for title to the Property by adverse possession. *See* ECF No. 46. Although she mentioned adverse possession in her answer, she did not assert it as an affirmative defense and did not produce competent summary judgment evidence or present legal arguments for how she could have acquired title to the Property from Larson, Cabelka's nominee, in that manner.

Under the Texas adverse possession statutes, "adverse possession" means "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code § 16.021(1) (2020). The summary judgment evidence proves that Larson was Cabelka's nominee, and any "appropriation" of the Property by Latimer would not have been "inconsistent with" and "hostile" to Larson since he was holding the property only on behalf of his friend, Cabelka. The Government argues further that Latimer cannot claim title by adverse possession because she did not file suit within the ten-year statute of limitations provided by section 16.026. The undersigned notes that it is the record owner of the property who must file suit against the adverse claimant

within the statute of limitations period or risk loss of title, not the other way around. *See*, *e.g.*, *Kazmir v. Benavides*, 288 S.W.2d 557, 561 (Tex. App.—Houston [14 Dist.] 2009, no pet.) ("Any ouster by the record title holder after the ten-year limitations period comes too late.").

However, Larson was merely Cabelka's nominee, and Latimer's residence on and use of Property was not "inconsistent with" or "hostile" to Larson and could not form a legitimate claim of adverse possession to which the limitation periods would apply. As the Texas Supreme Court has held, "[i]t is true that 'hostile' use does not require an intention to dispossess the rightful owner, or even know that there is one….But there must be an intention to claim property as one's own to the exclusion of all others; '[m]ere occupancy of land without any intention to appropriate it will not support the statute of limitations.'" *Tran v. Macha*, 231 S.W.3d 913, 915 (Tex. 2006) (citations omitted). "[T]he doctrine [of adverse possession] is a harsh one, taking real estate from a record owner without express consent or compensation. Before taking such a severe step, the law reasonably requires that the parties' intentions be very clear." *Id.* Latimer failed to plead and offer summary judgment evidence to prove that she intended to dispossess Larson of the Property. Thus, she failed to raise a fact issue on any claim that is the true owner of the Property by adverse possession against Larson.

    **B.**    **The Government is Entitled to Foreclose its Liens on the Property.**

The Government seeks an order permitting it to foreclose its liens on the Property and directing the sale of the Property as provided in 26 U.S.C. § 7403 and explained in *United States v. Rodgers*, 461 U.S. 677, 691-92 (1983). Title 26 U.S.C. § 7403(a) provides:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For

> purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

26 U.S.C. § 7403(a). The law further states:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States....

*Id.* § 7403(c).

The summary judgment evidence proves that the Government duly recorded Notices of Federal Tax Liens and an Abstract of Judgment concerning the Amended Judgment entered in the First Lawsuit in the Official Public Records of Archer County, Texas. ECF Nos. 23-23, 23-24, and 23-25. Notices regarding Cabelka's 1040 income tax liability for the periods ending December 31, 1997 through December 31, 2003 originally were recorded on April 19, 2007 and were refiled on October 31, 2016. ECF No. 23-23 at 1-5. A Notice regarding his liability for the periods ending December 31, 2005 through December 31, 2009 was recorded on February 24, 2015. ECF No. 23-23 at 6. The Notice identifying Larson as Cabelka's nominee for the periods ending December 31, 1997 through December 31, 2009 was recorded on June 27, 2017. ECF No. 24. The Abstract of Judgment in connection with the Amended Final Judgment in the First Lawsuit was recorded on February 2, 2018. ECF No. 23-25. As provided in 26 U.S.C. § 7403, the Government is entitled to foreclose its liens on the Property and to an order directing the sale of the Property, with the proceeds from the sale to be applied to Cabelka's judgment debt.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Chief Judge Lynn **GRANT** the United States of America's Motion for Summary Judgment, ECF No. 22, and

**ORDER**, pursuant to 26 U.S.C. § 7403, that the United States of America may foreclose its tax liens against the Property at issue located in Megargel, Archer County, Texas, as described in the Cash Deed from Schmaltz to Larson dated March 27, 2001, ECF No. 23-7, and sell such Property at a public sale as provided by law.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed February 14, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE